IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| BUNNETT & CO., INC. and ENERGY FEEDS INTERNATIONAL, LLC | § § § | |
| V. | § § | NO. A-15-CV-1104 LY |
| FRANK DORES | § § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:  THE HONORABLE LEE YEAKEL
     UNITED STATES DISTRICT JUDGE

Before the Court are Defendant Frank Dores's Motion to Dismiss Under Rule 12(b), Alternatively, Motion to Transfer Venue (Dkt. No. 2), Plaintiffs Bunnett & Co., Inc. and Energy Feeds International, LLC's Response (Dkt. No. 20), and Dores's Reply (Dkt. No. 26). The District Court referred the above motion to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. §636(b) and Rule 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.

**I. BACKGROUND**

Plaintiffs Bunnett & Co., Inc. and Energy Feeds International, LLC originally brought this action in the District Court of Travis County, Texas, alleging that the Defendant, Frank Dores, had breached his common law duty of loyalty and violated the Texas Uniform Trade Secrets Act. Plaintiffs are affiliated companies. Dores was the general manager of both companies until October, 2015 when, claiming that he was suffering form emotional distress, he resigned without notice. Plaintiffs allege that around the time of his departure, Dores formed his own corporate entity and began to compete with Plaintiffs. Further, they allege that he did so

with the benefit of critical competitive information he learned while working as the companies' general manager. Plaintiffs further allege that a forensic analysis revealed that Dores wiped the contents of his company-issued computer and iPad before returning them, so there is no record of whether he copied company records, or with whom he communicated in the weeks before his resignation. Thus, on November 24, 2015, Plaintiffs requested and were granted a Temporary Restraining Order by Travis County District Judge Orlinda Naranjo. Dkt. No. 19-3. The Court also scheduled a hearing on Plaintiffs' petition for a temporary injunction for December 8, 2015. *Id*. at 2. However, on December 7, 2015, Dores removed the action to this Court. That same day, Dores filed the instant Motion to Dismiss or Transfer Venue. A hearing was held before the undersigned on the instant motion, as well as Plaintiffs' motion for a new Temporary Restraining Order on January 13, 2016. Dkt. No. 43.[1]

## II.  ANALYSIS

By his motion, Dores requests that the Court dismiss this case because he argues he is not subject to personal jurisdiction in Texas. Alternatively, he contends that venue is not proper in this district, and that the case should be transferred to the Eastern District of California.

### A.     Personal Jurisdiction

Dores first challenges this Court's personal jurisdiction over him. Dores is a resident of California who, while working for Plaintiffs, maintained his office in California. Dkt. No. 2-1 at 1. By sworn affidavit Dores stated that:

> I do not have, nor have ever maintained, an office in Texas. I do not own any tangible assets in Texas. I have never visited Bunnett & Company, Inc.'s office in Texas. In performing my duties for the plaintiffs, I did not process any orders for any Texas customers or accounts. I did not enter into any contracts for sale of product to customers in Texas.

---

[1] The parties subsequently agreed to a TRO, which was entered by Judge Yeakel on January 13, 2016. Dkt. No. 47.

*Id*. Dores argues that he therefore does not "have minimum contacts in Texas sufficient for Texas to exercise personal jurisdiction over" him. *Id*.

Under Federal Rule of Civil Procedure 12(b)(2), the "plaintiff bears the burden of establishing a district court's jurisdiction over a non-resident." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). "It is well established that where the district court rules on a motion to dismiss for lack of jurisdiction without conducting an evidentiary hearing, the plaintiff may bear his burden by presenting a prima facie case of jurisdiction." *Felch v. Transportes Lar-Mex SA DE CV*, 92 F.3d 320, 326 (5th Cir. 1996) (citations omitted). However, when, as here, the Court holds an evidentiary hearing the plaintiff must establish jurisdiction by a preponderance of the evidence. *Id*.

"A federal court sitting in diversity may exercise personal jurisdiction over a non-resident defendant (1) as allowed under the state's long-arm statute; and (2) to the extent permitted by the Due Process Clause of the Fourteenth Amendment." *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 398 (5th Cir. 2009). The Texas long-arm statute extends to the limits of due process. *Id.* To satisfy due process, the plaintiff must demonstrate "(1) that the non-resident purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the state; and (2) that the exercise of jurisdiction does not offend 'traditional notions of fair play and substantial justice.'" *Johnston*, 523 F.3d at 609.

"A defendant establishes minimum contacts with a state if 'the defendant's conduct and connection with the forum state are such that [he] should reasonably anticipate being haled into court there.'" *Nuovo Pignone, SpA v. Storman Asia M/V*, 310 F.3d 374, 379 (5th Cir. 2002) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)). "There are two types of 'minimum contacts': those that give rise to specific personal jurisdiction and those that give rise

to general personal jurisdiction." *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001). A court has general jurisdiction over a nonresident defendant "to hear any and all claims" against him when his contacts with the state are so "'continuous and systematic' as to render [him] essentially at home in the forum." *Goodyear Dunlop Tires Operations v. Brown*, 131 S.Ct. 2846, 2851 (2011). "In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Id.* at 2851 (citation omitted). The Fifth Circuit frames the specific jurisdiction issue with a three-step analysis:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Monkton Ins. Servs. v. Ritter*, 768 F.3d 429, 433 (5th Cir. 2014) (citing *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006)). The plaintiff bears the burden of satisfying the first two prongs; if the plaintiff is successful, the burden shifts to the defendant to show that exercising jurisdiction would be unfair or unreasonable. *Seiferth*, 472 F.3d at 271. The main question is "whether there was 'some act by which the defendant purposefully avail[ed] [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Goodyear,* 131 S.Ct. at 2854 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). The Supreme Court recently stated that "[f]or a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 134 S.Ct. 1115, 1121 (2014).

In another case involving the reach of personal jurisdiction, three years ago the undersigned wrote the following:

4

The law of personal jurisdiction, which stems from constitutional principles, is judge-made, and although it has evolved greatly over the past 100 years, it remains obtuse and burdened by conclusory concepts.  The fundamental principles are handed down by the Supreme Court, interpreted and refined by the courts of appeal, and then applied to real cases by the district courts.  The result is that tens of thousands of cases addressing personal jurisdiction are cluttered with the same phrases, derived from seminal Supreme Court decisions, and repeated like mantras. Courts routinely recite the facts of a case, and then, using the doctrinal phrases, simply pronounce that a defendant "purposefully availed itself of the privilege of conducting activities" in the forum or "purposefully directed its activities" toward the forum.  This problem of unenlightening conclusory phrases in jurisdictional case law is not new, as it was noted more than 80 years ago by Learned Hand, as he discussed the notion of a corporation's "presence" for purposes of jurisdiction: "It scarcely advances the argument to say that a corporation must be 'present' in the foreign state, if we define that word as demanding such dealings as will subject it to jurisdiction, for then it does no more than put the question to be answered."  *Hutchinson v. Chase & Gilbert, Inc.*, 45 F.2d 139, 141 (2d Cir.1930).  Judge Hand remarked that "it has become quite impossible to establish any rule from the decided cases; we must step from tuft to tuft across the morass." *Id.* at 142.

Although the Supreme Court has tried in numerous cases to bring some order to this area of the law, the morass remains. In the seminal case of *International Shoe*, the Court defended its inability to state bright line rules by invoking the fact that the inquiry was a constitutional one:

> It is evident that the criteria by which we mark the boundary line between those activities which justify the subjection of a corporation to suit, and those which do not, cannot be simply mechanical or quantitative. The test is not merely, as has sometimes been suggested, whether the activity, which the corporation has seen fit to procure through its agents in another state, is a little more or a little less. Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure.

326 U.S. at 319 (citations omitted).  Even after thirty years to sort out what *International Shoe*'s "minimum contacts" test means, the Court made little progress:

> Like any standard that requires a determination of "reasonableness," the "minimum contacts" test of *International Shoe* is not susceptible of mechanical application; rather the facts of each case must be weighed to determine whether the requisite "affiliating circumstances" are present. . . .  We recognize that this

> determination is one in which few answers will be written in black and white. The greys are dominant, and even among them the shades are innumerable. *Kulko v. Superior Court*, 436 U.S., 84, 92 (1978).

*Transverse, LLC v. Info Directions, Inc.*, 2013 WL 3146838 at *3-4 (W.D. Tex. June 17, 2013).

Unfortunately, not much has changed in the past three years, and the law of personal jurisdiction remains murky. Technology and global electronic commerce have stretched the concept of what it means to have "contacts" with a state close to a breaking point. There are, however, still some helpful principles that can be gleaned from the cases, and which assist in applying the law to current circumstances. First, for contacts with a state to subject a party to suit there, the contacts must be "contacts that the *'defendant himself'* creates with the forum State." *Walden*, 134 S.Ct. at 1122 (quoting *Burger King*, 471 U.S. at 475) (emphasis added). Second, the principles and limits of jurisdiction "principally protect the liberty of the nonresident defendant—not the convenience of the plaintiff[ ] or third parties." *Id.* (citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980)). The "plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id.*

Turning to the defendant in this case, the facts are as follows. Dores was the general manager of both Energy Feeds International, LLC and Bunnett & Co., Inc. EFI is headquartered in California, but Bunnett & Co. has its headquarters in Lago Vista, Texas. Dkt. No. 2-3 (retention agreement between Dores and Bunnett & Co.). As general manager of Bunnett & Co. Dores was in near daily contact with company employees in Lago Vista, Texas, and essentially functioned as the chief operating officer of both companies. Phone records admitted at the January 13, 2016 hearing show from July to December, 2014, Dores placed dozens of phone calls to the Bunnett & Co. headquarters in Lago Vista, Texas. Dkt. No. 45-5 at 10-37. As part

6

of his duties as general manager of Bunnett & Co., Dores had regular contact with both suppliers and purchasers of the products Bunnett & Co. sells. *See, e.g.,* Dkt. No. 20-2 at 6, 13, 18, 20-21. Some of those suppliers and customers were in Texas. *Id*. In fact, the Court heard testimony at the hearing that Dores visited Amarillo, Texas at least twice on company business. By choosing to be employed by a company headquartered in Texas, and accepting a position as its general manager, which required him to make frequent contact with other company employees in Texas, and conduct business with suppliers and purchasers in Texas, Dores himself reached out and created contacts between himself and Texas. While such contacts may not be sufficient to establish general jurisdiction over Dores, they certainly suffice to establish jurisdiction specific to this dispute, which arises directly out of his former employment with Bunnett & Co.

Moreover, Plaintiffs allege that Dores breached his duty of loyalty to them when he resigned from the company and immediately began to use confidential information to solicit business from Plaintiffs' suppliers and customers located in Texas. Dores has denied these allegations, stating in a sworn affidavit that he is "not involved in any business competing with Plaintiffs and [has not been] since [his] employment with Plaintiffs ended." Dkt. No. 24-1 at 2 ¶ 5. Dores chose not to attend the hearing and subject himself to cross-examination on that point, however, and thus the Court gives very little weight to the statements in his affidavit on this issue. Indeed, at the hearing persuasive evidence demonstrating the opposite was introduced. Specifically, Plaintiffs submitted emails between Dores and representatives of OCI International, Inc. showing that Dores was in the process of negotiating a commission agreement with OCI in November, 2015, shortly before the state court entered its TRO preventing such activity. Dkt. No. 45-1 at 1-2. The address line for OCI reflects that it is located in Houston, Texas. *Id.* Additional evidence was admitted indicating that at this same time Dores, through counsel, was

7

negotiating a sales agreement with one of Bunnett & Co.'s largest suppliers, Natural Soda, Inc., through discussions with Sara Schaeffner, a vice president with Natural Soda, Inc., who is located in Dallas, Texas. *Id*. at 10-11.  William Bunnett testified at the hearing that until recently Bunnett & Co. had an exclusive distribution agreement with Natural Soda for the western U.S., and Bunnett & Co.'s sales under this agreement accounted for over 70% of Bunnett & Co.'s revenue.  On December 2, 2015, in a letter signed by Schaeffner, Natural Soda terminated its agreement with Bunnett & Co., citing among other things the fact that Dores had left both Bunnett & Co. and EFI.  Dkt. No. 26-3 at 45-46   This evidence not only makes the statements in Dores' sworn affidavit appear to be false, it demonstrates that Dores' conduct that gave rise to the breach of duty claim was directed at least in part at Texas, which further supports this Court's assertion of specific jurisdiction over Dores.

The Court finds by a preponderance of the evidence admitted at the hearing and submitted with the motions that Dores intentionally directed actions toward Texas both in being the general manager of a company headquartered in Texas and by attempting to enter into business arrangements with former Bunnett & Co. customers and suppliers in Texas.  This evidence is more than sufficient to demonstrate that Dores has sufficient contacts with Texas specific to this dispute to support this Court asserting personal jurisdiction over him with regard to this suit.

**B.    Venue**

Dores next argues that because he lives in California and did most of his work for Plaintiffs from California this Court is not the proper venue for this action.  He therefore requests that the Court transfer this case to the Eastern District of California.  The relevant statue provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may

8

transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (emphasis added). It is well settled that the party seeking the transfer of venue bears the burden of demonstrating that the case should be transferred. *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1966) ("plaintiff's privilege of choosing venue places the burden on the defendant to demonstrate why the forum should be changed"). The decision whether to transfer a case under § 1404(a) is a matter within the district court's sound discretion. *In re Volkswagen of America, Inc.*, 545 F.3d 304, 311 (5th Cir. 2008) (en banc), *cert. denied*, 129 S.Ct. 1336 (2009); *Jarvis Christian College v. Exxon Corp.*, 845 F.2d 523, 528 (5th Cir. 1988). The preliminary question under § 1404 is whether the lawsuit "might have been brought" in the destination venue. *In re Volkswagen*, 545 F.3d at 312. This case clearly "might have been brought" in the Eastern District of California, since Dores resides there, and Energy Feeds International, LLC's principal place of business is located there. Accordingly, the Court must determine whether Dores has shown "good cause" for transferring the case to California. *In re Volkswagen*, 545 F.3d at 315 (citing *Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963)).

This, in turn, requires him to "clearly demonstrate that a transfer is '[f]or the convenience of parties and witnesses, and in the interest of justice.' " *Id*. (quoting 28 U.S.C. § 1404(a)). In determining whether a transfer is for the convenience of parties and witnesses and in the interest of justice, courts look to a series of private and public factors. *In re Volkswagen*, 545 F.3d at 315. The private interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive." *Id.* The public interest factors include: "(1) the

administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws in the application of foreign law." *Id.* The Fifth Circuit has clarified that these factors are not exhaustive or exclusive and that none are dispositive. *Id.*

In his motion, Dores does not address these factors, instead relying on a provision in his employment agreement with Bunnett & Co. captioned "Governing Law; Jurisdiction." Dkt. No. 2-3 at 3. The section states:

> Each of the parties agree that the laws of the State of California applicable to contracts, transactions, and obligations entered into and to be performed in the State of California are chosen (choice of law) to govern, enforce, determine, and construe this Agreement and the legality, validity, and performance of the terms, conditions, covenants, provisions, and restrictions of this Agreement.

Dores argues that this section is a forum selection clause, establishing that any disputes between the parties must be heard in California. Despite its caption, this section of the agreement says nothing about which courts will have jurisdiction over any disputes, nor does it act as a forum selection clause. Rather, the section is a garden variety choice of law clause, setting out that disputes related to the contract are governed by California—as opposed to, for example, Texas or New York or Delaware—law. Moreover, Plaintiffs have not brought breach of contract claims, and the clause only pertains to issues regarding enforcing or construing the contract. Plaintiffs' claims are that Dores breached his common law duty of loyalty and violated the Texas Uniform Trade Secrets Act. This section, therefore, has no application to this case, and no bearing on the venue issue.

Still, in his reply to Plaintiffs' response to his motion, and at the January 13, 2016 evidentiary hearing, Dores argued that this action should be transferred to California for

10

convenience purposes. Most notably, he reiterated his stance that because he lives in California, maintaining this action in Texas would impose an unreasonable and undue burden on him. However, "Courts should not transfer a case 'if the only practical effect is to shift inconvenience from the moving party to the nonmoving party.'" *Spiegelberg v. Collegiate Licensing Co.*, 402 F. Supp. 2d 786, 789 (S.D. Tex. 2005) (quoting *Goodman Co., L.P. v. A & H Supply Co.*, 396 F.Supp.2d 766, 776 (S.D.Tex.2005)). Instead, the party seeking transfer must establish that a transfer would make it "substantially more convenient for the parties to litigate the case." *Gardipeev. Petroleum Helicopters, Inc.,* 49 F. Supp2d 925, 931 at n.6 (E.D. Tex. 1999).

And while the convenience of the witnesses "is often regarded as the most important factor to be considered in deciding whether to transfer venue," it is the convenience of *non-party* witnesses which is accorded the most weight. *Woolf v. Mary Kay Inc.*, 176 F. Supp.2d 642, 650 (N.D. Tex. 2001); *Ternium Intern. U.S.A. Corp. v. Consol. Sys.*, No. 3:08-CV-0816-G, 2009 WL 464953, at *4 (N.D. Tex. Feb. 24, 2009). A party seeking a transfer of venue must do more than make general allegations that key witnesses are unavailable or are inconveniently located. *Am. Airlines, Inc. v. Rogerson ATS*, 952 F. Supp. 377, 384 (N.D. Tex. 1996). Rather, the moving party must identify specific witnesses and outline the substance of their testimony. *Id.* Testimony at the January 13, 2016 hearing made clear that potential non-party witnesses come from all over the Untied States. Thus, while many of the witnesses in this action may have to travel to appear, such would be the case even if this action were transferred to California. Texas is no more inconvenient than California for a witness from Kentucky. As one district court noted, "it is not as if the key witnesses will be asked to travel to the wilds of Alaska or the furthest reaches on the Continental United States." *Continental Airlines, Inc. v. American Airlines, Inc.*, 805 F. Supp. 1392, 1397 (S.D. Tex. 1992).

Finally, a consideration of the *Volkswagen* public interest factors also discourages transfer. Among Plaintiffs' claims is that Dores violated the Texas Uniform Trade Secrets Act. Surely a United States District Court in Texas is more familiar with Texas statutes than one in California. In the final analysis, Dores has failed to meet his burden of demonstrating that the case should be transferred.

### III.  RECOMMENDATION

Based upon the foregoing, the undersigned **RECOMMENDS** that the District Court **DENY** Defendant Frank Dores's Motion to Dismiss Under Rule 12(b), Alternatively, Motion to Transfer Venue (Dkt. No. 2).

### IV.  WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 20 day of January, 2016.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE