# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| BUNNETT & CO., INC., et al. | § | |
| | § | |
| V. | § | A-15-CV-1104 -LY-AWA |
| | § | |
| FRANK DORES | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO: THE HONORABLE LEE YEAKEL
    UNITED STATES DISTRICT JUDGE

Before the Court are Plaintiffs' Motion for Attorney's Fees and Expenses (Dkt. No. 222); Ray Gearheart's Response (Dkt. No. 246); Todd Gearheart's Response (Dkt. No. 247); and Plaintiffs' Reply (Dkt. No. 249) The District Court referred the above-motion to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. §636(b)(1)(A), FED. R. CIV. P. 72, and Rule 1(c) of Appendix C of the Local Rules. The Court held a hearing on the motion on August 13, 2018.

## I. BACKGROUND

Plaintiffs Bunnett & Co., Inc. and Energy Feeds International, LLC (collectively Bunnett) originally filed this suit in state court against Frank Dores, alleging claims for breach of fiduciary duty and theft of trade secrets. Bunnett's dispute with Dores was only a small part of a larger story, involving Bunnett's relationship with two of its primary suppliers, Wawasan Agrolipids and Natural Soda. Though these related disputes are (or were) in litigation in other courts, their background is necessary to understand issues raised by Bunnett's fee request. Dores began working for Bunnett in 2008, eventually becoming the chief operating officer of both Bunnett entities. He abruptly resigned in October 2015, claiming he was experiencing severe emotional distress that made it

impossible to continue performing his duties. In fact, Dores was in the process of incorporating a new entity that he planned to use to compete against Bunnett. Additionally, Dores allegedly was in discussions with both Natural Soda and Wawasan to cement future relationships with both entities, in lieu of those companies' relationships with Bunnett. At this same time, Wawasan and Bunnett had a dispute that led to Wawasan ceasing being Bunnett's primary supplier and terminating its distribution relationship with Bunnett, which led to Bunnett being unable to fill customer orders. Also contemporaneously with these events a new Wawasan distributor—Agrofin—appeared on the market, offering to distribute Wawasan products to United States purchasers, the very business Bunnett had been engaged in. Ray Gearheart, a former Bunnett sales representative who terminated his relationship with Bunnett within days of Dores claiming he was disabled, became an independent sales agent for Agrofin, and emails show that Dores was also introducing potential customers to Agrofin. As a result of these events, Bunnett filed lawsuits against Dores, Wawasan, and Natural Soda, seeking injunctive relief and damages for its losses during this period.

In this case, on November 24, 2015, while the lawsuit was still pending in Texas state court, Bunnett obtained a temporary restraining order against Dores. Just before the preliminary injunction hearing was to take place in state court, Dores removed the case to this court. Bunnett thus once again requested a TRO, which Judge Yeakel granted on January 13, 2016. Dkt. No. 47. On January 22, 2016, Bunnett followed up with a motion for a preliminary injunction, but before a hearing was even scheduled Dores filed for protection in the United States Bankruptcy Court for the Eastern District of California. Dkt. Nos. 52. The claims against Dores were thus stayed. After months of discovery and motion practice in that court, Dores' petition was dismissed with prejudice on June

2

7, 2017, based on findings that Dores had engaged in "numerous instances of egregious conduct coupled with bad faith." Dkt. No. 157-3 at 29.

While the bankruptcy proceedings were underway, Bunnett filed a motion for order to show cause in this case, alleging that Wawasan and its Executive Director Gareth Cheong, Bunnett's former sales representative Ray Gearheart, his son Todd Gearheart (and their respective companies) all participated in a scheme in which Wawasan—with the help of the others and Dores's family members—sent money to Dores in violation of the TRO. Dkt. No. 65.[1] After the bankruptcy proceeding was dismissed, Bunnett added Dores to the motion. The Court set this matter for a three-day evidentiary hearing in July 2017. Shortly before the hearing, Bunnett filed a motion to voluntarily dismiss Wawasan and Cheong as Bunnett had reached a settlement with those parties—both as to this case and as to other litigation between them. The hearing thus proceeded against the Gearhearts, their related entities, and Frank Dores.

In March 2018, the Court issued its Report and Recommendation on the motion, Dkt. No. 216, which Judge Yeakel subsequently adopted, Dkt No. 221. The Court found that the Gearhearts and Dores violated the January TRO when the Gearhearts assisted Wawasan in sending Dores $20,000. Specifically, the Court found that the funds were transferred to Dores in payment of services he rendered Wawasan by soliciting customers for Agrofin and providing advice to Cheong. The Court awarded Bunnett $20,000 in damages, as well as attorney's fees and costs.

Bunnett has now filed its request for attorney's fees and costs. In its motion, it requests the following:

---

[1] The motion for order to show cause also named John Franklin, another former Bunnett sales representative, as a party, but he was dismissed for lack of personal jurisdiction.

| Description | Category | Amount |
|---|---|---|
| Schiff Hardin Attorneys' Fees Contempt | 1 | $397,359.00 |
| Schiff Hardin Attorneys' Fees Suppl. Declaration | 1 | $46,425.50 |
| Reduction in Schiff Hardin Attorneys' Fees Contempt, discussed above at Part II.A. | 1 | ($9,784.50) |
| Boulette Golden & Marin L.L.P.'s Attorneys' Fees Contempt | 1 | $13,702.50 |
| Contempt Expenses | 1 | $32,008.25 |
| **Revised Total for Category 1** | 1 | **$479,710.75** |
| Schiff Hardin Attorneys' Fees Related Depositions | 2 | $63,802.00 |
| Related Deposition Expenses | 2 | $22,428.31 |
| **Revised Total for Category 2** | | **$86,230.31** |
| Schiff Hardin Attorneys' Fees Dores's Bankruptcy Case | 3 | $407,084.50 |
| Reduction in Schiff Hardin Attorneys' Fees Dores's Bankruptcy Case, discussed above at page 7, n.4 | 3 | ($152,915.50) |
| Bankruptcy Case Expenses, including local co-counsel attorneys' fees and expenses | 3 | $72,313.51 |
| Reduction in Bankruptcy Case Expenses, discussed above at page 7, n.4 | | ($16,807.27) |
| **Revised Total for Category 3** | | **$309,675.24** |
| Management Travel Expenses | N/A | **$9,665.19** |
| **Revised Total** | | **$885,281.49** |

Dkt. No. 249 at 23. Bunnett breaks this request into three categories: (1) attorney's fees incurred during the contempt proceeding, (2) fees incurred in Dores' bankruptcy proceeding in order to achieve the dismissal, and (3) depositions taken during the Dores bankruptcy proceeding and used in these proceedings. The Contemnors object on a number of grounds, each of will be discussed in more detail below.

## II. ANALYSIS

"The interests of orderly government demand that respect and compliance be given to orders issued by courts possessed of jurisdiction of persons and subject matter." *United States v. United Mine Workers*, 330 U.S. 258, 303 (1947) (criminal case). Therefore, a court "possess[es] the

4

inherent authority to enforce [its] own injunctive decrees." *Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961 (5th Cir. 1995); *see also McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949) ("The force and vitality of judicial decrees derive from more robust sanctions."). "Civil contempt . . . can be used to compensate a party who has suffered unnecessary injuries or costs because of contumacious conduct." *Id.* at 961–62. Contempt law thus grants a court the "discretion to award reasonable attorney's fees and other expenses necessary to make an innocent party whole." *Dow Chem. Co. v. Chem. Cleaning, Inc.*, 434 F.2d 1212, 1215 (5th Cir. 1970). "Essentially, the sanction restores the . . . parties to where they were before they incurred attorney's fees in an attempt to ensure compliance with the injunction." *Matter of Skyport Glob. Commc'ns, Inc.*, 661 F. App'x 835, 841 (5th Cir. 2016).[2]

Bunnett seeks $885,281.49 in attorney's fees and costs, jointly and severally against the three Contemnors. The Fifth Circuit uses a two-step process to calculate attorney's fees. *Heidtman v. Cnty. of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999). First, a court calculates a "lodestar" figure of the number of hours reasonably expended multiplied by an appropriate hourly rate for that area. *Id.* After making that calculation, the district court may adjust the lodestar based on the factors set forth in *Johnson v. Georgia Highway Express, Inc.* 488 F.2d 714, 717-19 (5th Cir. 1974). *Id.*[3]

---

[2]*See also Cook v. Ochsner Found. Hosp.*, 559 F.2d 270, 272 (5th Cir. 1977) ("The theory for allowing attorney's fees for civil contempt is that civil contempt is a sanction to enforce compliance with an order of the court or to compensate for losses or damages sustained by reason of noncompliance.") (citing *United States v. United Mine Workers*, 330 U.S. 258, 303–04 (1947)).

[3]Those 12 factors are: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) the award

Ultimately, however, there is a "strong presumption that the lodestar award is the reasonable fee." *Id.* at 1044.

**A.    Contempt Proceeding**

First, Bunnett seeks to recover $479,710.75 in fees and costs directly incurred in the proceedings in this Court.[4] Based on its review of the materials submitted, and considering the lodestar amount and the *Johnson* factors, the Court agrees that the hours and rates requested by Bunnett's attorneys are reasonable. However, this is not the end of the analysis. In their briefing, T. and R. Gearheart argue that the attorney's fees should be "offset" by the amount paid by Wawasan in its settlement agreement. The Gearhearts requested production of this settlement agreement, but this was opposed by Bunnett and Wawasan. The Court declined to order production of this document for the reasons previously articulated (Dkt. No. 244), taking the attorneys at their word that the agreement resolved a number of different disputes, of which the contempt dispute was only a small part, and the consideration paid by Wawasan in exchange for its dismissal from this matter was not segregated from the overall consideration paid to resolve the parties' many disputes. At the hearing, Bunnett elaborated that a significant portion of the consideration paid in the settlement was not in dollars and cents, but instead was comprised of a number of non-monetary agreements, including Wawasan's agreement that Bunnett would once again be Wawasan's distributor in the U.S.

---

in similar cases. *Id.* at 1043 n.5.

[4]The Gearhearts objected to several specific costs claimed by Bunnett, including electronic research charges and legal secretary time. However, the Court finds these expenses reasonable in light of the extent of the litigation and how small the requested amount is relative to the total fees and expenses incurred.

At the end of the day, reviewing the agreement is not necessary to decide the offset argument, since, at its core, the argument not truly a direct offset claim. Rather, it is about the fairness of imposing the costs of litigating this matter solely on the non-settling Contemnors. From the beginning of these contempt proceedings, Wawasan was the main target. The biggest piece of the compensation Bunnett sought—its lost profits—was only sought from Wawasan, and it appeared from the outset that Bunnett's main goal was the resumption of business with Wawasan, which it achieved through the settlement agreement. By far, this was the most valuable part of Bunnett's success in this matter, and it is doubtful that Bunnett would have expended as much time, money, and energy if all it was seeking was $40,000 from the Dores and the Gearhearts. So long as Wawasan was a party to the dispute there was a lot more at stake than just the two surreptitious $20,000 payments.

Realistically, it is impossible to delineate which hours were incurred in pursuing Wawasan and which apply only to the three Contemnors. There is no way to segregate these fees based on a line item review, or through some other more defined approach.[5] This does not mean, however, that the Court should not make some sort of apportionment of the fees to account for the Wawasan settlement. As discussed above, our system of justice depends on parties following the orders of the court. This is fundamental to our system of government, and failure to do so demands a response. Thus, an award of attorney's fees in contempt cases is a form of damages meant to compensate a party seeking to protect the system. *See Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 585 (5th Cir. 2000) ("In this case the sanction issue by the district court sought to protect the sanctity of

---

[5]R. Gearheart identified several items which he purported related solely to Wawasan., and Bunnett supplemented its request to remove these amounts, resulting in a reduction of $9,784.50.

judicial decrees and the legal process."); *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949) ("The private or public rights that the decree sought to protect are an important measure of the remedy."). Here, the Court found that Dores and the Gearhearts violated the TRO. It would be unfair to punish Bunnett by forcing it to bear the entire costs of seeking damages for the Contemnors' failure to follow the orders of the Court. Second, it is clear that the actions of the Contemnors extended the litigation on this issue. The Contemnors have contested this proceeding vigorously from the outset, challenging jurisdiction and requiring Bunnett to establish a prima facie case at the beginning stages of litigation. Similarly. T Gearheart objected to this Court's jurisdiction, and continued to raise this point at every stage. Moreover, multiple continuances were granted at the Contemnors' request. At some point, the Contemnors have to take responsibility for at least some of the fees Bunnett was forced to incur here. After considering all of the above, the Court finds that Bunnett's recovery of attorney's fees and expenses should be reduced by 60% to account for the amount of fees Bunnett spent focused on its claims unique to Wawasan. This results in fees totaling $191,884.00.

The Gearhearts also argue that the Fifth Circuit requires that an award of attorney's fees be proportional to the damages the court has awarded. Relying on *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1048 (5th Cir. 1998) and *Saizan v. Delta Concrete Products Co., Inc.*, 448 F.3d 795, 201–03 (5th Cir. 2006), Contemnors maintain that the fees should be further reduced on this basis. Dkt. No. 246 at 10; Dkt. No. 247 at 19–20. In fact, at the hearing, counsel for R. Gearheart contended that the fee award should be in the range of no more than four, or even two, times the damages award. When pushed at the hearing, the Contemnors could not point to any cases in which

courts, granting attorney's fees as sanctions for civil contempt, applied a per se proportionality rule.[6] Rather, the amount of success, which can include the amount of damages awarded, is merely one factor to be considered. *Combs*, 829 F.3d at 396 ("Nevertheless, proportionality remains 'an appropriate consideration in the typical case.'"); *Saldivar v. Austin Ind. Sch. Dist.*, 675 F. App'x 429, 433 (5th Cir. 2017) ("Contrary to Saldivar's assertions, the district court did not reduce the fee solely on the basis of the amount of damages obtained, which would be an abuse of discretion."). However, even considering the proportionality of the attorney's fees when compared to the damages awarded in this case, a fee award eleven times greater than the damages is not outside the realm of reasonable.[7] This argument therefore fails.

---

[6] *Cf. Combs v. City of Huntington, Tex.*, 829 F.3d 388, 396 (finding, in a § 1988 analysis, that "we have consistently emphasized that 'there is no *per se* requirement of proportionality in an award of attorney's fees'") (quoting *Branch-Hines v. Herbert*, 939 F.2d 1311, 1322 (5th Cir. 1991); *Shakman v. Democratic Org. of Cook Cty.*, 533 F.2d 344, 351 (7th Cir. 1976) (finding, after awarding nominal damages that "[a]n award of costs and attorney fees in civil contempt is clearly proper and wholly independent of an award of compensatory damages"); *United Student Aid Funds, Inc. v. Gary's Grading & Landscaping*, 2008 WL 5539825, at *8 (M.D. Fla. Sept. 22, 2008) ("In accessing reasonableness, courts generally evaluate whether the amount at stake warranted the effort expended."). *See also Cobalt Boats, LLC v. Brunswick Corp.*, 296 F. Supp. 3d 791, 808 (E.D. Va. 2017) ("[T]his District has previously stated that 'while the Court must consider Plaintiff's degree of success, an attorney's fees award is not required to be directly proportional to the amount of damages that the client recovered in the legal action.") (quoting *Denton v. Pennymac Loan Servs., LLC*, 252 F. Supp. 3d 504, 530 (E.D. Va. 2017)).

[7] *See, e.g., Combs*, 829 F.3d at 397–98 (remanding on the basis that the district court had strictly applied a 6.5:1 proportionality based on *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041 (5th Cir. 1998)); *Auto Parts Mfg. Miss. Inc. v. King Constr. of Houston, LLC*, 258 F. Supp. 3d 740, 761 (N.D. Miss. 2017) (awarding, in addition to coercive sanctions of $100 per day, over $300,000 in attorney's fees and expenses in compensatory sanctions); *Lurizol Corp. v. Exxon Corp.*, 957 F.2d 1302 (5th Cir. 1992) (affirming in a breach of contract case an attorney's fees award of $2.4 million when the amount in controversy was, at most, $200,000); *In re Adams*, 516 B.R. 361, (S.D. Miss. 2014) (awarding $18,834.67 in "actual damages" for contempt, which included $1,200 in loss of property and rental fees and $17,000 in attorney's fees and expenses); *Saldivar v. Austin Ind. Sch. Dist.*, 675 F. App'x 429, 432 (5th Cir. 2017) (affirming a decision in which the district court reduced the award of attorney's fees to thirteen times the damages recovered).

Finally, T. Gearheart argues that Bunnett's recovery should be reduced following his offer of judgment made pursuant to Rule 68. That rule provides that "[if] the judgement that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made." FED. R. CIV. P. 68(d). The purpose of the rule is "to encourage settlement and avoid litigation." *Marek v. Chesny*, 473 U.S. 1, 7 (1985). For an offer to be enforceable, it "must provide 'a clear baseline from which plaintiffs may evaluate the merits of their case relative to the value of the offer.'" *Basha v. Mitsubishi Motor Credit of Am., Inc.*, 336 F.3d 451, 455 (5th Cir. 2003) (quoting *Thomas v. Nat. Football League Players Ass'n*, 273 F.d 1124, 1130 (D.C. Cir. 2001)). Ambiguities in offers of judgment are interpreted against the defendant, and the defendant has the burden to prove that the judgment received was "not more favorable" than the offer. *See In re Vaughn*, 2016 WL 836968, at *4 (M.D. Ala. Mar. 3, 2016) (citing *King v. Rivas*, 555 F.3d 14, 19 (1st Cir. 2009), *Reiter v. MTA New York Transit Auth.*, 457 F.3d 224, 231 (2d Cir. 2006), and *Danow v. Law Office of David E. Borack, P.A.*, 367 F. App'x 22, 24 (11th Cir. 2010)).

Here, T. Gearheart's offer of judgment does not meet the requirements of Rule 68. The offer of judgment is inconsistent and badly worded. For instance, though made on behalf of T. Gearheart (and E&K Ag), it offered to have *Dores* pay Bunnett the $40,000 he received from Wawasan. Dkt. No. 247-3 at 5. This term would be impossible to enforce against T. Gearheart, however, and Dores is not a signatory to the offer. Even setting aside this problem, the main deficiency with the offer is its ambiguity with regard to attorney's fees. It states that T. Gearheart will "pay costs of court (not including attorneys fees) up to the date of this offer and in an amount to be determined by the court." *Id.* at 6. It then goes on to offer "[t]hat there be a hearing on the issue of the extent, if any, that [T. Gearheart] should be required jointly and severally to pay Plaintiff's attorneys' fees incurred up to

10

the date of this offer, with the amount of attorneys fees determined by the court, if any, to be included in the judgment." *Id.* The ambiguity is caused by the distinction T. Gearheart makes between costs and attorneys fees. On "costs," he offers to pay those, without qualification, "in an amount to be determined by the court." But with regard to attorney's fees, he offers first, "that there be a hearing on the issue of the extent, *if any*," that he and E&K Ag should be required to pay, and then second, that "the amount of attorneys fees determined by the court, *if any*, to be included in the judgment." Had the language regarding attorney's fees been identical to that on costs, there would not be a problem. But the fact that the offer on attorney's fees contains all of these additional qualifications not included on the costs offer, requires that the Court interpret that part of the offer to mean something different than the offer on costs. And doing this results in the Court having to conclude that T. Gearheart was *not* offering to pay attorney's fees "in an amount determined by the court," but instead was offering to do something less, and far more contingent, than this. As such, the unaccepted offer is not clearly more favorable than the outcome Bunnett obtained through the trial, and thus Rule 68 does not bar the award of fees and costs in this case.

**B.    Bankruptcy Proceedings**

Bunnett also seeks attorney's fees and expenses incurred in obtaining the dismissal of Dores' bankruptcy proceedings. Specifically, Bunnett argues that it is entitled to recover the "fees incurred in addressing the automatic stay imposed by Frank Dores's bankruptcy case, ultimately by winning dismissal of Dores's bankruptcy case." Dkt. No. 222 at 7. Bunnett contends that lifting the automatic stay was imperative to its successful prosecution of the contempt proceedings, in particular because Dores could not rely on the automatic stay to prevent his testimony at the hearing. Moreover, Bunnett points to the fact that the bankruptcy judge found that Dores' "primary purpose

11

in filing the bankruptcy petition was to avoid or defeat the pending litigation against him." *Id.* (quoting Dkt. No. 150-2 at 22).

T. and R. Gearheart object to this recovery, contending that Bunnett applies a too-broad legal standard for attorney's fees. The Court need not delve into the specifics of the competing legal standards. At the hearing, Bunnett was unable to articulate the reasons that it was important that Dores be able to testify and that the Court lift the automatic stay. First, the "bad acts" on which Bunnett focuses to support the award are attributable entirely to Dores. He is the party who filed the bankruptcy petition, and did so on a fraudulent basis. The Gearhearts had nothing to do with that. Second, Dores could have been required to testify even with the pending bankruptcy suit. Of course, Dores would not have been one of the Contemnors and Bunnett would not have been able to recover from Dores. But if it was his testimony that was important, the bankruptcy stay would not have prevented it. And lifting the stay was unnecessary as far as obtaining relief from the Gearhearts was concerned. Moreover, though the Court found Dores not credible, his presence was not required for the findings the Court made. In fact, Dores' testimony provided little that was not available already through his depositions or other evidence. Thus, Dores' presence at trial and the lifting of the automatic stay are not sufficient justification to increase the award of fees by nearly $400,000.

T. and R. Gearheart also contend that Bunnett is barred by res judicata in seeking these fees and expenses. Though res judicata is not the correct lens through which to view this point, the underlying argument—again, one of fairness—has some validity. The point is that Bunnett could have sought to recover these fees as part of the bankruptcy litigation, but chose not to. The Court will not speculate on the reasons for this choice, but the fact that it was made has some bearing on the propriety of imposing those fees on the Gearhearts or Dores here.

For all of these reasons, the Court declines to recommend that any of the fees Bunnett incurred in Dores' bankruptcy proceedings be included in the fee award in this case.

**C.     Depositions**

Though taken as part of the bankruptcy proceedings, Bunnett separately requests just those attorney's fees and expenses incurred for taking the depositions of Wei Su, R. Gearheart, T. Gearheart, and Frank Dores.[8]  Bunnett relies on a Third Circuit opinion in support of this request. *See Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 414, 420 (3d Cir. 1993). In that case, the court found that much of the work expended in the related case was adopted into the instant action.  *Id.*  Thus, "if the district court had not adopted additional portions of that record, [the plaintiff] would have had to duplicate at least some of that work, and the time spent and expenses incurred would have been appropriate for inclusion in this case."  *Id.*  The court therefore held that

> if the plaintiff can prove that the fees and expenses incurred in the other litigation resulted in work product that was actually utilized in the instant litigation, that the time spent on other litigation was 'inextricably linked' to the issues raised in the present litigation, and that plaintiff has not previously been compensated for those fees and expenses, then the district court may include those fees and expenses in its fee award.

*Id.*  The reasoning in *Gulfstream* is persuasive here.  As in that case, Bunnett would have been required to conduct duplicative depositions of at least T. and R. Gearheart to pursue its claims against them in this Court.  Moreover, the Court relied on testimony from each of the four depositions repeatedly in its Report and Recommendation on the contempt issue to support the

---

[8]The segregation of these fees from the fees sought in the prior section suggests that Bunnett understood from the outset the weakness of its position that it was entitled to all of the attorney's fees it incurred in those proceedings.

13

conclusion that the Contemnors be found in contempt. As such, the reasonable attorney's fees incurred by Bunnett to take these depositions should be included in the fee award here.

However, the Court finds the number of hours expended on the depositions to be unreasonable. Bunnett submits logs for just under 145 hours for the four depositions. It appears that much of this work was duplicative,[9] and these fees should be reduced. For example, both Mr. Prewitt and Mr. Molzberger spent seven hours preparing for Dores' deposition. Similarly, Ms. DeStefano spent another seven hours in "deposition preparation" on the same date, as well as nine hours preparing deposition exhibits. The Court will therefore restrict the award to only the fees incurred by Mr. Prewitt, which totals 86 hours at $595 per hour. This amounts to $51,170 in fees and $22,428.31 in costs. Further, these fees and costs, as with those in Category 1, are subject to the same 60% reduction previously discussed, which reduces the total to $29,439.00.

**D.      Travel Expenses**

Finally, Bunnett seeks the travel expenses for JJ Bunnett to attend various proceedings in the Dores bankruptcy litigation as well as in these contempt proceedings. R. Gearheart objects, noting that these travel costs are not "attorney's fees and costs." The Court agrees. A client's travel costs are not something the attorney pays. If this is compensation Bunnett wished to receive, it should have been part of its damage request in the merits proceedings.

### III. RECOMMENDATIONS

This undersigned **RECOMMENDS** that the District Court **GRANT IN PART** and **DENY IN PART** the Motion for Attorney's Fees and Expenses (Dkt. No. 222) and **AWARD** to Bunnett

---

[9] It is difficult to be certain about this, as the time descriptions are conclusory ("prepare for deposition") and thus not very helpful.

& Co., Inc. and Energy Feeds International, LLC, $221,383.00 in attorney's fees and costs, to be paid jointly and severally by Todd Gearheart, E&K Ag LLC, Ray Gearheart, Gearheart Ag Consulting, Inc., and Frank Dores, and **DENY** all other relief requested.

### IV. WARNINGS

The parties may file objections to the Recommendations contained above. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED this 7th day of September, 2018.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE